# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:11-cv-00153-RJC

| | |
|---|---|
| JOHN D. MATTHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| STEPHEN IYEVBELE et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Sergeant J. Riley, Corporal P. Davis, Officer T. Gregory, Officer W. Jackson, Officer E. Kinne, Officer A. Beasley, and Officer K. Anderson. (Doc. No. 46). For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED.**

## I. BACKGROUND

### A. Procedural Background

This action was brought by pro se Plaintiff John Matthews on March 30, 2011, pursuant to 42 U.S.C. § 1983, against Mecklenburg County Sergeant Riley and others. (Doc. No. 1). Plaintiff alleged in the Complaint that Defendants violated his constitutional rights by taking him from the Mecklenburg County Jail for a DNA sample without a proper warrant for his search and seizure and without allowing him to contact his attorney; by interfering with his right to counsel; and by the use of excessive force while he was being handcuffed on August 12, 2010, for transfer to the Charlotte-Mecklenburg Police Department. (Id.). By Order dated April 19, 2011, the Court dismissed all Defendants and all claims except for the excessive force claim against Defendant Riley. (Doc. No. 8). Defendant Riley filed an Answer to the Complaint on June 1, 2011. (Doc. No. 16).

Following initial discovery, the Court allowed Plaintiff to amend his Complaint to add additional defendants that were allegedly involved in the handcuff incident and who allegedly used excessive force. These individuals were involved in the handcuffing incident on August 12, 2010, on which this claim is based. The Court allowed Plaintiff to amend his Complaint to add additional defendants, as the additional claims made by Plaintiff alleged the use of excessive force. (Doc. No. 26).

All Defendants, including those added in the Amended Complaint, filed an Answer to the Amended Complaint on August 30, 2011. The only claim remaining before the Court is whether Defendants used excessive force in handcuffing Plaintiff on August 12, 2010.

Defendants filed a Motion for Summary Judgment, (Doc. No. 46), on December 21, 2011. Plaintiff filed Responses to Defendants' Motion on January 6, 2012, (Doc. No. 48), and, following an Order from the Court, (Doc. No. 50), on January 23, 2012, (Doc. No. 51).

B.      Factual Background

On August 12, 2010, at approximately 10:30 a.m., Charlotte-Mecklenburg Police Officer Iyevbele summoned Plaintiff to the visitation area of the Mecklenburg County Jail, North facility, in reference to a search warrant for a DNA sample. (Doc. No. 46-1 at ¶ 3: Riley Aff.). Plaintiff refused to supply a DNA sample, and officers returned him to his pod at around 10:38 a.m. (Id.). Defendant Riley then instructed the pod officer to send Plaintiff back to visitation; Plaintiff initially refused to enter visitation. (Id.). Once Defendant Riley ordered him inside, Plaintiff complied and entered visitation. (Id.).

Once inside visitation, Plaintiff stated that he did not want to speak with Officer Iyevbele. (Id.). Defendant Riley then ordered Plaintiff to turn around in order to be handcuffed; Plaintiff initially refused. (Id.). Plaintiff then turned around and Defendant Riley attempted to

handcuff Plaintiff. (Id.). Defendant Riley placed the first cuff on Plaintiff's right hand. (Id.). Plaintiff resisted and refused to place his hands behind his back. (Id.). While using soft hands, Defendant Riley continued to order Plaintiff to put his hands behind his back, but Plaintiff resisted and sat down on the bench close to the entrance. Defendant Riley eventually dragged Plaintiff to the floor after multiple attempts to handcuff Plaintiff. See (Id.; see also Doc. No. 27-1 at 3: Mecklenburg County Sheriff's Office Use of Force Report).

Detention Officer Gregory called for assistance and then assisted Defendant Riley by placing her knee on Plaintiff's back to hold him to the ground. (Doc. No. 46-2 at ¶ 3: Gregory Aff.; Doc. No. 27-1 at 6). Corporal Davis attempted to get control of Plaintiff's left arm but was unsuccessful. When additional assistance arrived, Defendant Davis pulled on Plaintiff's shirt in an attempt to retrieve Plaintiff's left arm. (Doc. No. 46-3 at ¶ 3: Davis Aff.; Doc. No. 27-1 at 5). Detention Officer Beasley pulled Plaintiff's left arm out from beneath him and placed it behind his back so that Officer Jackson could secure handcuffs on Plaintiff's left hand. (Doc. No. 46-5 at ¶ 3: Beasley Aff.; Doc. No. 27-1 at 9). Defendant Riley and Officer Jackson escorted Plaintiff to A&R and placed him into a holding cell. (Doc. No. 46-6 at ¶ 3: Jackson Aff.; Doc. No. 27-1 at 7). Detention Officer Anderson arrived at Rear Visitation and witnessed Plaintiff on the floor handcuffed and in the holding cell. (Doc. No. 46-7 at ¶ 3: Anderson Aff.; Doc. No. 27-1 at 11). Defendant Riley directed Plaintiff to roll onto his side and stand up. (Id.). Plaintiff followed Defendant Riley's orders, and he was then escorted out of Rear Visitation. (Id.).

Officer Iyevbele transported Plaintiff to the Law Enforcement Center. Upon being returned to Jail North later the same day, Plaintiff was given the opportunity to give a statement regarding the handcuffing incident. Plaintiff provided only that Defendant Riley grabbed his arm to be handcuffed without explanation. Plaintiff refused to make additional statements

regarding the incident. (Doc. No. 46-10 at 2; Doc. No. 27-1 at 10). Nurse Tracy Dudley examined Plaintiff and noted only minimal swelling and bruising to Plaintiff's right wrist. (Doc. No. 46-8 at ¶¶ 3-4: Dudley Aff.). Nurse Dudley provided Plaintiff an ice pack to treat the swelling. Photographs taken by Zachery Naifeh, a Corporal with the Sheriff's Office, confirm the minor abrasions on Plaintiff's arm. These photographs also indicate that Plaintiff suffered two minor abrasions on his face. (Doc. No. 46-9 at 2-5).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a

verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III.   ANALYSIS

"[E]xcessive force claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment." Young v. Prince George's Cnty., Md., 355 F.3d 751, 758 (4th Cir. 2004) (quoting Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998)). To succeed on such a claim, a plaintiff must show that defendants "inflicted unnecessary and wanton pain and suffering." Id. In adjudicating an excessive force claim, the court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and whether the force was "applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973); see also Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-79 (2010) (per curiam). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth

> Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 1178-79 (citations omitted).

As noted, the remaining claim is Plaintiff's claim that Defendants used excessive force while handcuffing Plaintiff. Defendants have presented evidence on summary judgment showing that Plaintiff's resistance necessitated the assistance of numerous officers in order to handcuff Plaintiff for transportation to the Law Enforcement Center from the facility to conduct a reasonable search of Plaintiff. Plaintiff concedes that he resisted being handcuffed. While he was on the floor, Plaintiff had his left arm under his body and resisted officers' efforts to get his arm behind his back to secure the second handcuff. Defendant Davis was unable to pull Plaintiff's left arm out from under his body. Assistance from Officers Beasley and Jackson was necessary and reasonable under these circumstances. These officers were able to pull Plaintiff's left arm out from under his body and secure the left handcuff.

In response to Defendants' motion for summary judgment, Plaintiff submitted two of his own affidavits. (Doc. Nos. 51-1; 51-2). Plaintiff's affidavits do not raise a genuine issue of material fact as to whether Defendants used excessive force while handcuffing Plaintiff. Rather, the affidavits confirm that Defendants used no more force than necessary to handcuff Plaintiff, who admits that he was resisting while Defendants attempting to handcuff him. For instance,

Plaintiff's first affidavit confirms that he resisted being handcuffed. He states that when one of the cuffs hit his arm he "straighten[ed] [his] arm out"; "was taken by surprise . . . [and froze] up"; and when the cuff slammed tight around his forearm and was "squeezed super tight" he became "panicky and ask[ed] what's going on, what are you doing." (Doc. No. 51-1 at 5). Even under Plaintiff's version of events, he demonstrated resistance to being handcuffed by straightening his arm and freezing up. Plaintiff has simply presented no evidence showing that Defendants acted anything other than reasonably in attempting to gain control of Plaintiff so that they could place the handcuffs on him, or that Defendants acted with sadistic or malicious intent. Although Plaintiff contends that Defendant Riley tried to break Plaintiff's arm while handcuffing Plaintiff, Plaintiff's allegations regarding Riley's conduct are simply not consistent with the minimal injuries that Plaintiff incurred from the officers' use of force while handcuffing him. In sum, the evidence demonstrates that the force used was reasonably necessary to gain sufficient control over Plaintiff to handcuff him.

Next, although a showing of only de minimis injury is not dispositive in an excessive force case, a court may consider the extent of a plaintiff's injury as one factor in determining whether the defendant officers used excessive force against the plaintiff. Here, Nurse Dudley's medical affidavit, photographs of Plaintiff's injuries, and Plaintiff's medical records show that Plaintiff did not suffer anything more than minimal injury, which favors a finding that Defendants did not use excessive force.

In sum, the Court finds that Plaintiff has raised no genuine issue of material fact as to whether Defendants used excessive force.[1] Rather, the evidence supports the conclusion that

---

[1] Because the Court finds that there was no constitutional violation in the first instance, the Court does not need to address Defendants' contention that they are entitled to qualified

Defendants used minimal and reasonable force in a good faith effort to restore discipline and to handcuff Plaintiff in order to transport him to the Charlotte Mecklenburg Police Department. Therefore, the Court will grant summary judgment to Defendants.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Defendants' motion for summary judgment, (Doc. No. 46), is **GRANTED**, and Plaintiff's action is dismissed with prejudice.

Signed: July 3, 2012

Robert J. Conrad, Jr.
Chief United States District Judge

---

immunity.